IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HAROLD FORD AND JOFFERY REID,    §
                                 §
          Plaintiffs,            §
                                 §
VS.                              §     Civ. A. H-13-2598
                                 §
HOUSTON INDEPENDENT SCHOOL       §
DISTRICT,                        §
                                 §
          Defendant.             §

**<u>OPINION AND ORDER</u>**

Pending before the Court in the above referenced cause, seeking overtime compensation for "extra" work that Plaintiffs Harold Ford ("Ford") and Joffery Reid, Jr. ("Reid") performed, allegedly willfully denied in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201(a)(1), *et seq.*, is Defendant the Houston Independent School District's ("HISD's") motion for summary judgment (instrument #12) based on the "occasional or sporadic" exemption under 29 U.S.C. § 207(p)(2) and its implementing regulation, 29 C.F.R. § 553.30.

While there is almost no case law, published or unpublished, on the occasional or sporadic exemption to overtime compensation under the FLSA, there are two on-point cases related to the instant suit pending against HISD in the Houston Division of the Southern District of Texas: *Blair v. HISD*, H-13-2628, on the docket of the Honorable Gray Miller; and *Franklin v. HISD*, H-13-3207, pending before the Honorable Vanessa Gilmore. Both courts have issued orders denying summary judgment to HISD, but Judge Miller is currently considering a motion to reconsider,

while Judge Gilmore's case is set for trial.  The relevant documents of each have been made part of the record of this case, as will be discussed.  *See* Plaintiffs' post-submission notification of relevant authority (#21); HISD's Response (#24); Plaintiff's post-submission notification of opposition to reconsideration (#26); and Plaintiffs' post-submission notification of relevant authority (#28), of which this Court takes judicial notice.[1]  The same attorney, Thomas H. Padgett, Jr., represents the plaintiffs in all three actions, while Paul A. Lamp represents HISD in all of them.  While the facts differ slightly, the same issue is raised in all three suits and is one of first impression.

---

[1] In *Taylor Charter Medical Corp.*, 162 F.3d 827, 829-30 (5th Cir. 1998)(citations omitted), the Fifth Circuit joined the Second and Eleventh Circuit Courts of Appeals in ruling that while

> a court may take judicial notice of a "document filed in another court . . . to establish the fact of such litigation and related filings," a court cannot take judicial notice of the factual findings of another court.  This is so because (1) such findings do not constitute facts "not subject to reasonable dispute" within the meaning of Rule 201; and (2) were [it permissible for a court to take judicial notice of a fact merely because it had been found to be true in some other action, the doctrine of collateral estoppel would be superfluous."

A court may take judicial notice of an order of another court only for the limited purpose of recognizing the judicial act that the order represents.  *Id.* at 831; *Colonial Leasing Co.*, 762 F.2d at 759.  *See also Kay v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664-65 (N.D. Tex. 2011)("When a court takes judicial notice of public documents or documents from another court, it may only take notice of the undisputed facts therein, which do not include the 'facts' asserted in various affidavits and depositions.").

## Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which the nonmovant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40

F.3d 698, 712 (5th Cir. 1994).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th

-4-

Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991). The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

Summary judgment may be employed to adjudicate affirmative defenses.[2] *U.S. v. McLean*, 420 F. Supp. 2d 613, 615 (E.D. Tex. 2006), *citing* James W. Moore, *et al.*, *Moore's Fed.*

---

[2] An affirmative defense does not seek to negate a plaintiff's case, but argues that even if the plaintiff's claim is true, he should be denied a remedy for other reasons. *In re Hardwood P-G, Inc.*, Nos. 06-50057-LMC, 06-5278-LMC, 2007 WL 1728653, at *4 (Bkrtcy. W.D. Tex. June 12, 2007) *citing Gomez v. Toledo*, 446 U.S. 635, 641 n.8 (1980).

*Practice* ¶56 (3d ed. 1999).  The party moving for summary judgment on an affirmative defense must submit evidence to support each element of the defense and show there is no genuine issue of material fact regarding it.  *Id., citing  Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

### Applicable Substantive Law

Congress enacted the FLSA in 1938, during the Great Depression, with the intent to "protect all covered workers from substandard wages and oppressive working conditions." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). The FLSA mandates that employers pay overtime compensation for nonexempt employees.[3] *Rainey v. McWane, Inc.*, 314 Fed. Appx. 693, 694 (5th Cir. Mar. 12, 2009), citing 29 U.S.C. § 207(a).   The FLSA, 29 U.S.C. § 207(a)(1), generally requires an employer to pay employees who work more than forty hours per seven-day work week at a rate not less than one and one-half times the employee's regular rate.  *Allen v. Coil Tubing Servs., LLC,* Civ. A. No. H-08-3370, 2011 WL 4916003, *5 (S.D. Tex. Oct. 17, 2011); *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001); *Thibodeaux v. Executive Jet Intern., Inc.*, 328 F.3d 742, 749 (5th Cir. 2003).

Under 29 U.S.C. § 216(b), an employer who violates the FLSA shall be liable for "unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  Moreover

---

[3]  The employer bears the burden of proving by a preponderance of the evidence that an exemption from the overtime provision is plainly and unmistakably applicable to his employee. *Meza v. Intelligent Mexican Marketing, Inc.*, 720 F.3d 577, 580-81 (5th Cir. 2013).

any person who repeatedly or willfully violates Section 206 or 207, relating to wages, shall be subject to a civil penalty not to exceed $1,100 for each such violation." 29 U.S.C. § 216(e)(2).[4]

Thus an employer who violates the FLSA is liable for liquidated damages equal to the unpaid overtime unless the court finds that the employer acted in good faith and had reasonable grounds to believe that his actions complied with the statute and therefore declines to award or reduces the amount of the liquidated damages. *Stokes v. BWXT Pantex, LLC*, 424 Fed. Appx. 324, 326 (5th Cir. May 4, 2011), citing 29 U.S.C. § 260. The employer bears the burden of demonstrating that it acted in good faith to escape mandatory liquidated damages under the statute. *Perez*, 2011 WL 2672431, at *9, *citing Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003), and *Stokes v. BWXT Pantex, LLC*, 424 Fed. Appx. at 326.

Title 29 U.S.C. § 211(c) requires that the employer "make, keep and preserve such records of the persons employed by him and of the wages, hours, and other conditions of employment

---

[4] Under FLSA, a violation is "willful" if the employer "'either knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2002), *quoting Reich v, Bay, Inc.*, 23 F.3d 110, 117 (5 th Cir. 1994), *quoting McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The plaintiff bears the burden of demonstrating that the FLSA violation was willful. *Id.* The Fifth Circuit determined that an employer acted willfully when the evidence demonstrated that the employer had actual knowledge that it was violating the FLSA and continued to do so. *Singer*, 324 F.3d at 822. It also found a willful violation where the evidence indicated that the employer was put on notice by the local wage and hour board that its practices violated the overtime provision, yet the employer continued in that practice without investigating further. *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994).

maintained by him." As summarized in *Lynch v. Jet Center of Dallas, LLC*, Civ. A. No. 3:05-CV-2229-L, 2007 WL 211101, *5 (N.D. Tex. Jan. 26, 2007),

> Under the FLSA, "an employee who brings suit for unpaid overtime compensation bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated." *Reeves v. International Telephone & Telegraph Co.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077 . . . (1981), *implicit overruling on other grounds recognized in Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 n.4 (5th Cir. 1999). Where an employer keeps incomplete or [in]accurate records, however, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *In re Williams*, 298 F.3d 458, 465 (5th Cir. 2002)(*citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 . . . (1946) [superseded in part by statute on other grounds by The Portal-to-Portal Act, amending FLSA in 1947, 29 U.S.C. § 251, *et seq*.]. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Anderson*, 328 U.S. at 687-88. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

As stated by the Supreme Court, "The remedial nature of this statute and the great public policy which it embodies . . . militate against making [the plaintiff's burden] an impossible hurdle for the employee." *Anderson*, 328 U.S. at 687. It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment; the employer is

in a superior position to know and produce most probative facts concerning the nature and amount of work performed and "[e]mployees seldom keep such records themselves." *Id.* Therefore if the employer fails to keep proper and accurate records and "the employee cannot offer convincing substitutes,"

> [t]he solution is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88.

"'It is . . . a fundamental precept of the FLSA that an employee should not be denied [recovery] because proof of the number of hours worked is inexact or not perfectly accurate.'"). *Perez*, 2011 WL 2672431, *9, *quoting Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 989 (W.D. Tenn. 2011). "A plaintiff need not 'prove each hour of overtime with unerring accuracy or certainty.'" *Prince*, 2009 WL 2170042, *6. "In the absence of rebuttal by

defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Id., quoting Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, *3 (S.D.N.Y. Jan. 30, 2009)(finding plaintiffs' initial burden was satisfied by affidavits based on the plaintiffs' recollection describing the time spent performing various tasks for which they did not receive overtime compensation). Evidence can include plaintiff's testimony as to when and how many overtime hours he worked, plaintiff's affidavit to such, etc. *Prince*, 2009 WL 2170042, at *6.

Title 29 U.S.C. § 213, titled "Exemptions," identifies types of employees who are exempt from the FLSA's overtime provisions of sections 206 and 207. It includes employees working in bona fide executive, administrative, and professional capacities, certain educational or sales activities and certain specified occupations (e.g., seamen, "outside salesmen"). The employer bears the burden of demonstrating that it is entitled to an exemption because its employee performs exempted work. Exemptions from the FLSA overtime provisions are narrowly construed against the employer, and the employer bears the burden of demonstrating that an employee is exempt. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002), *citing Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990); *Singer v. City of Waco, Texas*, 324 F.3d 813, 820 (5th Cir. 2003); *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 471 (5th Cir. 2010). *See also Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)("[A]pplication of an exemption under the Fair Labor

-10-

Standards Act is a matter of affirmative defense on which the employer has the burden of proof."). A defendant asserting an affirmative defense "must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d1190, 1194 (5 [th] Cir. 1986)(emphasis in original). *See also Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)("general rule that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof"); *Dalheim*, 918 F.2d at 1224 ("The § 13(a)(1) [29 U.S.C. § 213(a)(1)] exemptions are 'construed narrowly against the employer seeking to assert them,' and the employer bears the burden of proving that employees are exempt.").

Whether an employee is exempt or not exempt under the FLSA is mainly a fact issue determined by his salary and duties and application of the factors in 29 C.F.R. § 541.200(a), but the ultimate decision is a question of law. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir. 2000); *McKee v. CBF Corp.*, 299 Fed. Appx. 426, 429 (5th Cir. Nov. 17, 2008). For discussion of exemptions *see, e.g., Thibodeaux*, 328 F.3d 742; *Vela*, 276 F.3d 659.

An express exception to the FLSA overtime requirement is the "occasional or sporadic" exemption under 29 U.S.C. § 207(p)(2), asserted here by HISD against Plaintiffs' overtime compensation claims for their ancillary work:

> If an employee of a public agency which is a
> State, political subdivision of a State, or
> an interstate governmental agency undertakes,

-11-

> on an occasional or sporadic basis and solely at the employee's option, part-time employment for the public agency which is in a different capacity from any capacity in which the employee is regularly employed with the public agency, the hours such employee was employed in performing the different employment shall be excluded by the public agency in the calculation of the hours for which the employee is entitled to overtime compensation under this section.

*Id.*

Where the FLSA does not speak directly to an issue, i.e., where the statutory meaning is unclear from the language of the statute, the DOL's regulations, opinion letters and other forms of guidance "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). "Deference is appropriate only when Congress has given the agency authority to make rules carrying the force of law." *Kasten v. Saint-Gobain Performance Plastics Corp.* , 131 S. Ct. 1325, 1339 (2011), *citing Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006). The Secretary of Labor has such authorization under some provisions of the FLSA (*see, e.g.*, §§ 203(l) and 206(a)(2)). *Id.* at 1340. *See, e.g., Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 521 (5th Cir. 1989)(holding that the DOL's interpretations, 29 C.F.R. § 783.31 of the seaman exemption under the FLSA, 29 U.S.C. § 213(b)(6), which have been consistent since the regulation was enacted in 1939, are entitled to great weight in construing the FLSA.), *citing Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 297 (1985).

The regulations and the clarifications of regulations by the DOL are entitled to deference unless they are unreasonable. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."); *Auer v. Robbins*, 519 U.S. 452, 461 (1997)(holding that the DOL's interpretation of a FLSA regulation is "controlling unless 'plainly erroneous or inconsistent with the regulation'"), *quoting Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989). Deference is also not warranted where the court suspects that the agency's interpretation "'does not reflect the agency's fair and considered judgment on the matter in question,'" e.g. where "the agency's interpretation conflicts with a prior interpretation" or it "appears that the interpretation is nothing more than a 'convenient litigation position,'" or "''a *post hoc* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-67 (2012), *citing and quoting Auer*, 519 U.S. at 462; *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994); and *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 212-13 (1988). "Unlike a regulation, a DOL opinion letter is an informal agency interpretation." *Lipnicki v. Meritage Homes Corp.*, Civ. A. No. 3:10-CV-605, 2014 WL 923524, at *4 (S.D. Tex. Feb. 13, 2014). The weight given to an opinion letter "'will depend upon the thoroughness evident in its consideration, the

validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Id., quoting Skidmore v. Swift & Co.*, 323 U.S. at 140. "[T]he term 'Skidmore deference' has described the deference due to an agency's informal interpretation, which turns largely on its 'power to persuade.'" *Id., citing Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1340 (2011)(Scalia, J., dissenting); *Luminant Generation Co. LLC v. U.S. E.P.A.*, 675 F.3d 917, 928 (5th Cir. 2012); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)(applying *Skidmore* deference to DOL's opinion letter and finding its interpretation unpersuasive because it was at odds with the statutory language); and others. Opinion letters have a more limited role because, by their own terms, they are based on a particular set of facts and circumstances. *Id.* at *5.

The Department of Labor's ("DOL's") regulation, 29 C.F.R. § 553.30 (Occasional or sporadic employment--section 7(p)(2)), relating to § 207(p)(1), provides in relevant part,

> (a) Section 7(p)(2) of the FLSA provides that where State or local government employees, solely at their option, work occasionally or sporadically on a part-time basis for the same public agency in a different capacity from their regular employment, the hours worked in the different jobs shall not be combined for the purpose of determining overtime liability under the Act.

> (b) Occasional or sporadic.

> (1) The term occasional or sporadic means infrequent, irregular, or occurring in scattered instances. There may be an occasional need for additional resources in

the delivery of certain types of public
services which is at times best met by the
part-time employment of an individual who is
already a public employee. Where employees
freely and solely at their own option enter
into such activity, the total hours worked
will not be combined for purposes of
determining any overtime compensation due on
the regular, primary job. However, in order
to prevent overtime abuse, such hours worked
are to be excluded from computing overtime
compensation due only where the occasional or
sporadic assignments are not within the same
general occupational category as the
employee's regular work.

(2) In order for an employee's occasional or
sporadic work on a part-time basis to qualify
for exemption under section 7(p)(2), the
employee's decision to work in a different
capacity must be made freely and without
coercion, implicit or explicit, by the
employer. An employer may suggest that an
employee undertake another kind of work for
the same unit of government when the need for
assistance arises, but the employee must be
free to refuse to perform such work without
sanction and without being required to
explain or justify the decision.

(3) Typically, public recreation and park
facilities, and stadiums or auditoriums
utilize employees in occasional or sporadic
work. Some of these employment activities are
the taking of tickets, providing security for
special events (e.g., concerts, sports
events, and lectures), officiating at youth
or other recreation and sports events, or
engaging in food or beverage sales at special
events, such as a county fair. Employment in
such activity may be considered occasional or
sporadic for regular employees of State or
local government agencies even where the need
can be anticipated because it recurs
seasonally (e.g., a holiday concert at a city
college, a program of scheduled sports
events, or assistance by a city payroll clerk
in processing returns at tax filing time).
An activity does not fail to be occasional
merely because it is recurring. In contrast,
for example, if a parks department clerk, in
addition to his or her regular job, also

-15-

regularly works additional hours on a part-time basis (e.g., every week or every other week) at a public park food and beverage sales center operated by that agency, the additional work does not constitute intermittent and irregular employment and, therefore, the hours worked would be combined in computing any overtime compensation due.

(c) Different capacity.

(1) In order for employment in these occasional or sporadic activities not to be considered subject to the overtime requirements of section 7 of the FLSA, the regular government employment of the individual performing them must also be in a different capacity, i.e., it must not fall within the same general occupational category.

(2) In general, the Administrator will consider the duties and other factors contained in the definitions of the 3–digit categories of occupations in the Dictionary of Occupational Titles (except in the case of public safety employees as discussed below in section (3)), as well as all the facts and circumstances in a particular case, in determining whether employment in a second capacity is substantially different from the regular employment.

(3) For example, if a public park employee primarily engaged in playground maintenance also from time to time cleans an evening recreation center operated by the same agency, the additional work would be considered hours worked for the same employer and subject to the Act's overtime requirements because it is not in a different capacity. This would be the case even though the work was occasional or sporadic, and was not regularly scheduled. Public safety employees taking on any kind of security or safety function within the same local government are never considered to be employed in a different capacity.

(4) However, if a bookkeeper for a municipal park agency or a city mail clerk occasionally

referees for an adult evening basketball league sponsored by the city, the hours worked as a referee would be considered to be in a different general occupational category than the primary employment and would not be counted as hours worked for overtime purposes on the regular job. A person regularly employed as a bus driver may assist in crowd control, for example, at an event such as a winter festival, and in doing so, would be deemed to be serving in a different capacity. . . .

It is undisputed here that HISD is a local governmental entity. Tex. Local Gov't Code § 271.151(3)(school districts included in definition of "local governmental entity" as a political subdivision of the state); Tex. Gov't Code § 554.001(2)(c)(same). *See Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806, 809 (5th Cir. 1999)(stating that Santa Fe Independent School District "is a political subdivision of the State of Texas").

The FLSA has a two-year statute of limitations, but that period is extended to three years where the violation is willful. 29 U.S.C. § 255(a).[5]  To show that an employer willfully violated

_____

[5] Section 255 states in relevant part,

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act of 1938 . . .

(a) if the cause of action accrues on or after May 14, 1947--may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . .

-17-

the FLSA, the plaintiff employee bears the burden to show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the Act. *Singer v. City of Waco, Texas*, 324 F.3d 813. 821 (5th Cir. 2003), *quoting McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Generally the employee must show that the employer had some reason to know that its conduct violated the FLSA beyond mere ignorance of the law, e.g., that the employer had previously been put on notice that its practices violated the law. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990); *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994).

### HISD's Motion for Summary Judgment (#12)

HISD alleges that Ford and Reid are former, non-exempt, hourly HISD employees who worked in HISD's Athletic Department. Although Ford and Reid charge that HISD failed to pay them overtime compensation for the "extra" work that they performed, beyond their regular job duties, HISD asserts it was not required to pay them overtime for that work under the "occasional or sporadic" exemption to FLSA's overtime requirement under 29 U.S.C. § 207(p)(2) and 29 C.F.R. § 553.30(b). HISD claims that the only issue here is whether HISD properly applied this exemption.

For the "occasional or sporadic" exemption to apply under 29 C.F.R. § 553.30(a), HISD observes that the employer must show that (1) the  plaintiff, as an employee of a state or local governmental entity, (2) voluntarily (3) performed occasional or sporadic work for the governmental entity that was part-time and

(4) in a different capacity from the regular duties of the employee. 29 C.F.R. § 553.30(a)

With supporting documentation, HISD explains that it hired Ford in 2007 as, and he remained at all relevant times as, a groundskeeper at HISD's Delmar Sports Complex, until he resigned on or about January 6, 2012. HISD hired Reid in 2004, initially for work with its schools and later, and at all relevant times for purposes of this lawsuit, as a stadium and equipment technician at Delmar Sports Complex, specifically the Delmar field house, until he resigned on or about July 7, 2012.

HISD explains that Plaintiffs did two types of work: (1) "regular" work comprised of their daily job functions, i.e., groundskeeping work on athletic fields and cleaning after athletic events at the Delmar Sports Complex; and (2) "extra" work done in a different capacity than their "regular" job duties. Plaintiffs' "regular" work was performed Monday through Friday from 7:00 a.m. to 3:00 p.m. Ford's regular job functions involved tasks like mowing grass, weed-eating, and cleaning the stands after sporting events. Reid's regular work was comprised of mowing grass, preparing fields for sporting events, picking up trash, emptying trash cans, power washing stadiums, and cleaning parking lots after events. Ex. A at pp. 16-18, 49-50; Ex. B at pp. 19-20, 35, 40. Plaintiffs have stated during their depositions that they do not seek to recover overtime wages for their regular work, for

which they were properly paid,[6] but only overtime for their extra work.

HISD maintains that Plaintiffs "had the opportunity to perform 'extra' work during HISD athletic events" that was unrelated to their regular work duties.  #12 at p. 3.  The extra work involved selling and taking tickets and operating time clocks for sporting events, while Ford additionally guarded doors.  Ex. A at pp. 16-18; Ex. A-1 (examples of Ford's time sheets for extra work) at pp. 4-5; Ex. B at pp. 19-20, 35, 40; Ex. B-1 (examples of Reid's time sheets for extra work).  The extra work is designated (and thus distinguished from regular work) on payroll records as "Stadium Attendant" work.  Ex. B; Ex. C, (Ford's payroll records); Ex. D. (Reid's payroll records).  Ford and Reid were paid $10.50 per hour for their extra work, a different rate from that for their regular work (Ex. B at pp. 28-29).[7]  Moreover they performed the extra work **after** their regular work hours (i.e., not from 7:00 a.m. to 3:00 p.m.).  They also logged in their hours for extra work on different time sheets from those for reporting their regular work hours (Ex. A at pp. 29-30; Ex. B at pp. 26-27, 39-40).  In addition, they admitted during their depositions that they could choose whether or not to do the extra work (Ex. A at pp. 18-20; Ex. B at pp. 22-24).

---

[6] Ford Dep., Ex. A at pp. 36-37; Reid Dep., Ex. B at pp. 12, 15.

[7] In their Opposition (#16 at pp. 5-6), Ford and Reid state that Ford was paid $8.00 per hour for his primary job and $10.50 per hour for his work as a stadium attendant (Exs. 1, 2 and 5).  Reid was paid $11.50 per hour for his primary job and $10.50 per hour for his work as a stadium attendant (Exs. 2 and 7).

Because the statute of limitations for alleged willful violations of the FLSA is three years, 29 U.S.C. § 255(a),[8] Ford, who filed his complaint (#1) on September 4, 2013, can only seek to recover wages back to September 4, 2010.  Reid, who filed his claim on March 24, 2014 in Plaintiffs' First Amended Complaint (#10), may only endeavor to recover wages back to March 24, 2011.  Because Ford resigned on January 6, 2012, the time period involved for his claim is 489 days, while for Reid, whose last day at work was July 7, 2012, the relevant period is 471 days.

HISD argues that Ford and Reid's extra work was "occasional or sporadic" and was part-time because it was available irregularly, because Plaintiffs were not compelled to do the work, but could chose to do so to make extra money, and because it was not performed during their regular work hours or during overtime for their full-time jobs.  The implementing regulation, 29 C.F.R. § 553.30(b), defines "occasional or sporadic" as meaning "infrequent, irregular, or occurring in scattered instances."  HISD highlights that the definition is phrased in the disjunctive ("or"):  the extra work does not have to be both occasional and sporadic. 29 U.S.C. § 207(p)(2).  *See, e.g.*, U.S. Dept. of Labor Wage & Hour Div. Opinion Letter (Fair Labor Standards Act), FLSA2005-32, 2005 DOLWH LEXIS 39 (Sept. 9, 2005)(occasional work:  volunteer reserve sheriff's deputies performing security services for a week at an annual state fair every August qualified for the exemption); U.S. Dept. of Labor,

---

[8] HISD denies violating the FLSA, much less willfully doing so.

Wage & Hour Div., Opinion Letter (Fair Labor Standards Act), FLSA2008-16, 2008 DOLWH LEXIS 40 (Dec. 18, 2008)(sporadic work: a Latino victim specialist working part-time as a reserve police officer qualified for the exemption so long as his hours did not occur "on a predictable basis"). "An activity does not fail to be occasional merely because it is recurring." 28 C.F.R. § 553.30(b)(3). Work performed in relation to "a program of scheduled sports events" may qualify for the occasional or sporadic exemption. *Id.*

HISD argues that the proper inquiry for determining if additional work performed by an employee qualifies as occasional or sporadic under the FLSA is whether the employee's performance of the work is occasional or sporadic, not whether the work itself is. *See* U.S. Dept. of Labor, Wage & Hour Div., Opinion Letter (Fair Labor Standards Act), FLSA2008-16, 2008 DOLWH LEXIS 40 (Dec. 18, 2008)(applying an individualized inquiry about whether an employee's infrequent performance of work that was consistently available to him qualifies for the occasional or sporadic exemption). HISD maintains that Plaintiffs performed the extra work at scheduled, recurring HISD sporting events irregularly and infrequently, as evidenced by their payroll records and therefore their work qualifies as occasional or sporadic under the FLSA.

HISD declares that Ford's performance of his stadium work was "sporadic" because it varied from day to day, month to month, and year to year, as evidenced by Ford's payroll records (Ex. C) and from a chart HISD drew in its motion (#12 at p. 11). His hours of extra work for a single shift varied from two hours

-22-

to thirteen hours; he worked on different days and for different numbers of days in different weeks, and different numbers of hours in different months.

Ford's performance of extra work was also "occasional" because, again as reflected in his payroll records, he worked infrequently during the relevant 489-day period: he performed extra work on only 112 days, 23% of the period. Ex. C. Broken down, the extra work was performed by Ford on 35 days in 2010, and 77 days in 2011. Ford did not perform any extra work in the 184 days between February 22, 2011 and August 25, 2011. Ex. C at HISD.00167-HISD.00174. The infrequency of this stadium work by Ford constitutes "occasional" work within the meaning of the exemption.[9]

Reid's performance of extra work was also "sporadic" because, as evidenced in his payroll records, it also varied from day to day, from month to month, and from year to year. In a single shift, his work varied from less than one hour up to 13.5 hours. Ex. D. As another example, for the week from September 12-18, 2011 he worked on Thursday, Friday and Saturday (Ex. D at HISD.00240), but the next week he did no stadium work at all. *See also* HISD's chart, #12 at p.15.

Reid's infrequent performance of extra work also qualifies as "occasional" under 29 U.S.C. § 207(p)(2), as demonstrated by his payroll records. Out of the 471 days in his

---

[9] Without identifying the time period or providing evidentiary support, Plaintiffs claim that Ford worked 115 separate times for 551.15 hours as a stadium attendant, and Reid, 35 separate times for 182.35 hours. #16 at p. 9.

relevant time period, he performed extra work on only 36 occasions, or 8% of the days in that period.  Ex. D.  He worked only ten days in 2011 (Ex. D at HISD.00232-00244) and 26 days in 2012 (Ex. D at HISD,00244-00254).  HISD shows that three times there were periods of 60 or more days that Reid did not perform even one hour of extra work:  (1) 175 days between March 24, 2011-September 14, 2011; (2) 61 days between Sept. 27, 2011 and November 28, 2011; and (3) 98 days March 31, 2012-July 7, 2012.  Ex. D at HISD.00232-00240, 00240-00243, and 00249-00254.

HISD also contends that Ford and Reid's extra work met the requirement under 29 C.F.R. § 553.30(c)(2) that extra work be distinct from, and performed in a "different capacity" than, the employees' regular work.  That regulation sets out examples in parts of subsections (c)(3) and (c)(4) to help determine if the work was or was not performed by the employee in a different capacity:

> (3) . . . [F]or example, if a public park employee primarily engaged in playground maintenance also from time to time cleans an evening recreation center operated by the same agency, the additional work would be considered hours worked for the same employer and subject to the Act's overtime requirements because it is not in a different capacity.

> (4) [I]f a bookkeeper for a municipal park agency or a city mail clerk occasionally referees for an adult evening basketball league sponsored by the city, the hours worked as a referee would be considered to be in a different general occupational category than the primary employment and would not be counted as hours worked for overtime purposes on the regular job. A person regularly employed as a bus driver may assist in crowd control, for example, at an event such as a

-24-

winter festival, and in doing so, would be
deemed to be serving in a different capacity.

Here, urges HISD, Plaintiffs' extra work duties (taking tickets,
operating timing clocks and guarding doors during athletic events)
were distinctly different from their regular work duties of mowing
grass and cleaning parking lots and stands after sports events.
Their regular work tasks dealt with the preparation required for
HISD's sports teams to compete in a variety of events and with
cleaning up after those events.  Their extra work tasks dealt with
ensuring that spectators bought tickets to the events, keeping
spectators out of restricted areas, and assisting referees with
timing the events.  Their regular work duties were performed
before and after the events, while their extra work duties were
performed during them.  The only similarity between the two is
that they both related to sporting events, insists HISD.

HISD points out that the O*NET system's occupation
classifications, published by the Employment and Training
Administration ("ETA"), reflect that most of the tasks Ford and
Reid performed in regular work and those performed in their extra
work are two "occupations" that are substantially different.[10]

---

[10] Employment and Training Admin., U.S. Dep't of Labor,
Dictionary of Occupational Titles (4 th ed. 1991).  As noted in
*Jones v. Montaire Corp. Long Term Disability Plan*, 542 F.3d 234,
235 n.2 (8th Cir. 2008), *abrogated on other grounds as stated in
Chronister v. Unum Life Ins. Co. of America*, 563 F.3d 773, 775 (8th
Cir. 2009),

The [Dictionary of Occupational Titles] was
created by the Employment and Training
Administration, and was last updated in 1991.
It is included on the Office of
Administrative Law Judges web site because it
is a standard reference in several types of

O*NET would classify Plaintiffs' regular work duties under "Landscaping and Groundskeeping Workers" (37-3011.00), which includes tasks like mowing and caring for grass, gathering and

_____

> cases adjudicated by the office of Administrative law Judges, especially labor-related immigration cases. The [Dictionary of Occupational Titles], however, has been replaced by the O*NET.        "
> *www.oalj.gol.gov/LIBDOT.HTM* . . . .

The Eighth Circuit further explained,

> The O*NET "is a database of occupational requirements and worker attributes. It describes occupations in terms of the skills and knowledge required, how the work is performed, and typical work settings. It can be used by businesses, educators, job seekers, human resources professionals, and the publicly funded Workforce Investment System to help meet the talent needs of our competitive global economy."
> www.doleta.gov/programs/ONET . . . .

The O*NET "superseded the [Dictionary of Occupational Titles] as the federal government's primary source of occupational information." *Hauser v. Commissioner of Social Sec.*, No. 1:12-cv-796, 2014 WL 48554, at *12 (S.D. Ohio Jan. 7, 2014)(*citing* 73 Fed. Reg. 78864 (Dec. 23, 2008), and *Horsley v. Comm'r of Soc. Sec.*, No. 1:11-cv-703, 2013 WL 980315, at *3 (S.D. Ohio Mar. 13, 2013)), *report and recommendation adopted*, 2014 WL 221946 (S.D. Ohio Jan. 21, 2014). In *Wennersten v. Colvin*, No. 12-cv-783-bbc, 2013 WL 4821173, at * 4 (W.D. Wis. Sept. 10, 2012), the district court commented, "Because the *Dictionary* has not been updated since 1991, it is 'considered obsolete by mosh other federal agencies' outside the Social Security administration. Even the Department of Labor, the publisher of the *Dictionary*, now uses the O*NET instead." *Id., citing Horsley* and *Jordan v. Astrue*, 4:08CV3217, 2009 WL 3380979 (D. Neb. Oct. 21, 2009). *See also Cunningham v. Astrue*, 360 Fed. Appx. 606, 616 (6th Cir. Jan. 5, 2010)("In light of the fact that more current job descriptions were available at the time of the hearing before the ALJ--the Department of Labor replaced the [Dictionary of Occupational Titles] with the Occupational information Network (O*NET), a database that is continually updated based on data collection efforts that began in 2001--and the two descriptions relied on by the VE are not found in O*NET--we conclude that the VE's dependence on the [Dictionary] listings alone does not warrant a presumption of reliability."

removing litter, and providing upkeep of grounds features. *See* O*NET, http://onetonline.org/link/summary/37-3011.00. Their extra work would likely fall under the O*NET's system classification of "Amusement and Recreation Attendants" (39-3091.00), which lists duties such as selling tickets and collecting fees from customers, selling and serving refreshments to customers, and monitoring activities to ensure adherence to rules and safety procedure. *See* O*NET, http://www.onetonline.org/link/summary/29-3091.00. *See also* U.S. Dept. of Labor, Wage & Hour Div., Opinion Letter (Fair Labor Standards Act), FLS2006-40, 2006 DOLWH LEXIS 53 (Oct. 20, 2006)(relying on the O*NET system's occupation descriptions to determine whether a school employee's regular duties differ from the duties required of the employee working as  a ticket-taker, security worker, etc. at a sporting event.).  HISD contends that clearly the tasks of the two kinds of work are distinctly different and that Plaintiffs' extra work was performed in a different capacity from their regular work.

### Plaintiffs' Opposition (#16)

Arguing that HISD is not entitled to the exemption from overtime requirements and must pay Ford and Reid overtime for time spent on their "extra" or ancillary work as "stadium attendants," Ford and Reid emphasize that the Delmar Sports Complex conducts sporting events throughout the school year ("from virtually the first day of school until the last and sometimes into the summer"[11])(Exs. 1 (Ford Decl.), 2 (Reid Decl.), 3, 4, and 5), that

---

[11] #16 at p. 11.

"these events are not 'special'" but are "an on-going part of the school year,"[12] that these events are not possible without the work performed by Ford and Reid in their primary job and as stadium attendants, and that all Ford's and Reid's duties are essential to the business of running the continuous sporting events.  Thus they cannot be occasional or sporadic.  Ford and Reid state that there are no reported cases on the meaning of "occasional or sporadic," and only five Wage and Hour Opinions by the DOL, which fail to establish a bright line for what constitutes "occasional or sporadic" employment, yet Plaintiffs simultaneously argue that HISD cannot meet the standard for the "occasional or sporadic" exemption.   The fact that the events of different sports are seasonal or regularly occurring does not necessarily mean they are "infrequent."  HISD staffs every one of the different sports games with employees who take tickets, keep time and score, and monitor the halls.

Disagreeing with HISD, Plaintiffs contend that it is the job that must be evaluated and that the application of the exemption is not an "individualized inquiry."   In light of the many potential employees who could be affected and because the pay policy is district-wide, the Court should focus on the job and not the particular employee.

Nor, insist Ford and Reid, has or can HISD prove that the duties performed by Ford and Reid in their ancillary work were distinct from those they performed in their primary job on the

---

[12] #16 at p. 10.

ground that the current O*NET classifications, as well as the previously used Dictionary of Occupational Titles, separate the particular duties of their primary job and of their extra work sufficiently to make them "significantly different."  They argue that HISD's reliance on the two separate O*NET classifications of "Landscaping and Groundskeeping Workers (37-3011.00)" and "Amusement and Recreation Attendants (39.3091.00) is misleading: the two are actually numerically right next to each other in the O*NET's job families because there is no 38 series; thus it cannot be said that they are significantly different.  In the previous classification of duties in the Dictionary of Occupational Titles the two jobs were both listed in the "Service Occupations" section and were both in the 300's.  Their primary job duties would fall under either "Cleaners" (Group No. 381) or "Janitors" (Group No. 382).   Ex. 11, pp. 27-29.   At the very least, these classifications raise genuine issues of material fact as to whether they are distinct.  Their extra work would generally be classified as "Ticket Taker" (344.667-010):  "Collects admission tickets and passes from patrons at entertainment events. . . . Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons such as intoxication or improper attire. . . . May be designated Gate Attendant or Turnstile Attendant." Ex. 12.  They argue that although no specific designations in the Dictionary of Occupational Titles addresses duties of a timekeeper or scorekeeper, these tasks "are not significantly different from the other jobs to justify an exemption."  #16 at p. 14.  All their

duties were essential to the overall operation of the Delmar sports Complex.

Plaintiffs further maintain that 29 C.F.R. § 553.30(c)(3) does not establish an exemption and that HISD misinterprets its examples in a way that obstructs the purpose of the FLSA. HISD claims that Ford's and Reid's primary jobs and their other jobs are similar to the example of a "bookkeeper" as contrasted to a "referee" and thus the exemption would apply. Ford and Reid disagree. Every task performed by Ford and Reid is essential to the performance of a sporting event and is carried out in the same space, i.e., the Sports Complex.[13] They insist there is a fact issue whether "maintenance" can include taking tickets, score keeping, time keeping, and hall monitoring since all these task are absolutely required for the facility to conduct its business.

Even if HISD is right that the two jobs are different, Ford and Reid contend that HISD has still violated the FLSA by paying two different rates and not paying Plaintiffs based on a weighted average. Under the law, when an employee in a single workweek works at two or more different types of work for which different straight-time rates exist, the regular rate for that week is the weighted average of those rates: the earnings of all are added together and the total is divided by the number of hours

---

[13] HISD charges that such illogical reasoning would mean that a school principal performs in the same capacity as the school's janitor because both jobs were essential to the performance of the school and both employees perform their duties on the same campus. #18 at p.6. The Court agrees.

worked at all the jobs.  *See* 29 C.F.R. §§ 778.415-.421 and 29
U.S.C. § 207(g)(2).

### HISD's Reply (#18)

HISD asserts that Plaintiffs have not contested that (1)
they were properly paid for all overtime worked in their regular
job capacity, (2) their stadium work was part-time, and (3) their
stadium work was voluntary.  It concludes that the only issues in
dispute relating to the application of the occasional or sporadic
exclusion are whether their stadium work was occasional or
sporadic and whether it was distinct from their regular work and
performed in a different capacity.  Distinguishing an "exclusion"
from an "exemption" under the FLSA, HISD argues that an
"exemption" "removes the employee from under the purview of the
statute altogether based on the employee's job duties,
classification and salary."  #18 at p.2, *citing* 29 C.F.R. §§
541.0-710.  In contrast, the occasional or sporadic exclusion
removes specific hours of work by a non-exempt state or local
employee from the total number of hours worked by him during the
workweek, but does not completely negate the calculations.  29
C.F.R. § 553.30(a).  Therefore HISD urges the Court to disregard
as not applicable here Plaintiffs' argument that FLSA exemptions
are construed narrowly against the employer.

HISD argues that Plaintiffs' insistence that the Court
review the stadium work on a class-wide, job basis rather than
employ an individualized inquiry specific to each worker lacks
legal support and is not logical.  The plain language of 29 C.F.R.
§ 553.30(a) focuses on the hours actually spent by a particular

worker, not on extra work potentially available to an employee. HISD hypothetically observes that if a city holds a farmers' market every week, but the city employee chooses only to work at it two days a year, his extra work would not satisfy the occasional or sporadic exclusion merely because the extra work was consistently and frequently available to all city employees. The Court agrees with HISD on this argument; § 207(p)(2) refers to an individual employee and not a group of employees who fill that job at different times. Title 29 U.S.C. § 203(e) defines "employee" as "an individual employed by an employer." HISD concludes that the application of an appropriate individualized assessment to each Plaintiff's work here reveals that the stadium work performed by each man was both "occasional" and "sporadic."

According to HISD, Plaintiffs address the frequency of the stadium work available to them and avoid discussing the sporadic nature of it. HISD reiterates that not only did each Plaintiff's time sheets prove that each of their individual performances of stadium work was irregular and changed depending on the time, day of the week, day of the month, and the year, but HISD further maintains that aggregately the stadium work was sporadic: it occurred "sometime" during the summer months and on varying nights of the week during the school year, changing with the particular sport in season, and at varying times. #16 at p. 9; Exs. 12-6, 12-7, 16-4. Thus the result does not depend on an individualized or class-wide approach; under both, stadium work is "sporadic."

HISD also insists that it satisfies the requirement that the stadium work be distinct from and be performed in a different capacity than Plaintiffs' regular work.  Plaintiffs' regular job duties were before and after the sports events, performed for the benefit of the HISD students and the coaching staff, and essential to the sporting events.  On the other hand, Plaintiffs' stadium work tasks were performed during the sports events, for the benefit of the spectators, and were essential to presenting the sports event as a performance.

HISD objects that the O*NET occupation classifications do not demonstrate similarities between Plaintiffs regular and stadium work.  Under Plaintiffs' illogical reasoning, the duties of an "Entertainment Attendant" (39-3091.00) are not distinctly different from those of an "embalmer" (39-4011.00) because the classification numbers are near each other.  Just as misplaced is their argument that the larger the separation between the classification numbers in the Dictionary of Occupational Title, the greater the disparity in jobs, while the closer the numbers, the more similar the job duties.  An example is that an employee who regularly performed work as a "weight guesser" at a carnival (342.357-010) would avoid the occasional or sporadic exemption if he also worked as a "jinrikisha driver" (rickshaw driver, 349.477-010) because both jobs are within the 300 series numbers.  Instead, the correct approach is to look to the facts and circumstances of the work that Ford and Reid actually performed, with the clear result being that the distinctly different regular and extra work tasks were performed in different capacities.  As

noted, an examination of the different jobs in both sources demonstrates that HISD is correct and that Ford and Reid's contentions have no basis.

Last of all, HISD maintains, and the Court concurs, that HISD did not violate the FLSA by paying two different rates and not paying overtime using a weighted average. HISD insists that the FLSA does not bar an employer from paying an employee different rates of pay and that the occasional or sporadic exclusion removes Plaintiffs' stadium work from the competition of overtime so that the weighted average does not apply. It is well established that an employee who performs "different kinds of work" may be compensated with different rates of pay. 29 C.F.R. § 778.115[14]; 29 U.S.C. § 207(g). *See Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1304, 1311-13 (11th Cir. 2007)(Section 207(g)(2)[15] permits alternative method of calculating overtime for

_____

[14] Section 778.115 ("Employees working at two or more rates") states in relevant part,

> Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs . . . .

[15] 29 U.S.C. § 207(g)(2) provides,

(g) Employment at piece rates

No employer shall be deemed to have violated subsection (a) of this section by employing

-34-

employees paid more than one rate and does not require that different types of work must be performed if different rates are paid)(citing 29 C.F.R. § 778.115)(*quoting Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)("As long as the minimum hourly rates established by Section 6 are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit.  They may agree to pay compensation according to any time or work measurement they desire."))[16]; *Rodriguez v. Republic Services, Inc.*, No. SA-13-CV-

---

> any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection--
>
> **(2)** in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours . . . .

[16] This Court notes that in *Allen*, 495 F.3d at 1313, the Eleventh Circuit opined that when one reads section 778.115 in the context of 29 C.F.R. § 778.109 ("The following sections give some examples of the proper method of determining the regular rate of pay in particular instances . . . ."),

> it becomes apparent that the former is one of the examples mentioned in the latter as a way that the regular rate may be calculated in certain cases.  While it exemplifies one way that a regular rate may be determined, it does not mandate that differing rates of pay are only permitted when different types of work are performed.

-35-

20-XR, 2013 WL 5656129, at *2 (W.D. Tex. Oct. 15, 2012).[17]
Furthermore urges HISD, as discussed, Plaintiffs' stadium hours
are removed from their overtime calculations under the occasional
or sporadic exclusion.  Therefore HISD complied with the FLSA when
it compensated Plaintiffs at a different rate for their stadium
work and did not incorporate the stadium rate of pay into their
overtime calculations.

### Judge Miller's Opinion in *Blair v. HISD*[18]

Judge Miller's case has facts very similar to those
before this Court in the instant case.  HISD hired Wiley Blair,
III in 1995 as a groundsman at the Delmar Sports Complex.  His
regular work, performed from 7:00 a.m. to 3:30 p.m., Monday
through Friday, was composed of cleaning the athletic facilities
and parking lots and readying the fields and locker rooms for
sporting events.  His ancillary work for the HISD sporting events
involved taking tickets, running the clock, and providing
security, all outside of the time period of his regular work.
Blair was paid a different hourly rate for his regular work than

---

*See also Corpus Juris Secundum Labor* § 1339 ("Methods of
Computation")(database updated Dec. 2014) ("A 'blended rate' may
be used in calculating the 'regular rate' of pay for employees who
are paid at more than one rate; the FLSA regulations do not
mandate that different types of work be performed in order for a
blended rate to be used."), *citing Allen*, 495 F.3d 1306.

[17] This Court notes that there have been no allegations
here that HISD pressured Plaintiffs to under-report or report
untruthful hours of overtime, nor has the accuracy of their
reported hours in HISD's payroll records been challenged.

[18] Exhibit to #21; Memorandum and Opinion, #20 in H-13-
2628.  Also available as *Blair v. HISD*, Civ. A. H-13-2628, 2014 WL
5429383 (S.D. Tex. Oct. 24, 2014).

for his extra work, and he was not paid overtime for the extra work.   After Blair sued HISD for overtime compensation for his ancillary work that was over forty hours per week when combined with his regular work, HISD moved for summary judgment on the grounds that the ancillary work was subject to the occasional or sporadic exemption to the FLSA and that it did not have to pay Blair overtime on the extra work.

Judge Miller, observing that there is no clear standard to measure the occasional or sporadic nature of employment, found that because Blair's employment record showed that he worked in an ancillary capacity mainly in November and December of 2010 and in January and February of 2012, and otherwise sporadically, his extra work was sufficiently infrequent, irregular or scattered to meet the occasional or sporadic element of the exemption.   With regard to the "different capacity" requirement, employing the two examples in 29 C.F.R. § 553.30(c)(3) and (4), Judge Miller found that Blair's regular and ancillary duties were more similar to those of the bookkeeper or mail clerk who also referees than to the maintenance man who also cleans.   Since the case law and the regulations fail to provide clear guidance, Judge Miller examined the broad remedial purpose of the FLSA and its narrowly construed exemptions.   He concluded that he could not find that Blair's extra work was similar enough to be within the same capacity as a matter of law:   "There is a clear factual dispute as to the similarity of Blair's regular work of preparing athletic facilities for sporting events and his ancillary work of helping run the events themselves"; "Blair's duties for his ancillary work

-37-

were not 'plainly and unmistakably' within a different capacity."
*Blair*, 2014 WL 5429383, at *4, *citing A.H. Phillips, Inc. v.
Walling*, 324 U.S. 490, 493 (1945)("To extend an exemption to other
than those plainly and unmistakably within its terms is to abuse
the interpretive process and to frustrate the announced will of
the people."); *Yoakum v. PBK Architects, Inc.*, No. H-10-00278,
2011 WL 468870, at *3 (S.D. Tex. Oct. 4, 2011 (nature of
plaintiff's duties is a fact question); *Owens v. CEVA
Logistics/TNT*, No. H-11-2237, 2012 WL 6691115, at *15 (S.D. Tex.
Dec. 21, 2012)(employer bears the burden to show a FLSA exemption
plainly and unmistakably applies).  Judge Miller concluded that
HISD had not demonstrated as a matter of law that Blair's regular
work was plainly and unmistakably in a different capacity than his
ancillary work and denied HISD's motion for summary judgment.

HISD has moved for reconsideration (#21 in H-13-2628)
and responded in the instant action to Plaintiffs' notification of
Judge Miller's order (#24 in H-13-2598).  It contends that Judge
Miller treated the occasional or sporadic analysis as an
"exemption" rather than as an "exclusion" and therefore narrowly
construed it, leading to an erroneous result.  (In the case before
this Court, HISD highlights the distinction between an exemption
and an exclusion).  *See Sandifer v. U.S. Steel Corp.*, 134 S. Ct.
870, 879 n.7 (2014)(exemptions, generally identified in 29 U.S.C.
§ 213 in a section entitled "Exemptions," in the FLSA, are
narrowly construed against the employer).  HISD explains that
courts are required to narrowly construe FLSA exemptions because
they serve to completely remove covered employees from the

-38-

statute's protections.  Judge Miller's application of a narrow construction and higher burden of proof of an "exemption" on § 207(p)(2) is in error because § 207(p)(2) is an "exclusion" of certain hours worked from overtime pay as opposed to an exemption based on an employee's job classification.  An employer is not required to pay any overtime to an exempt employee nor to track his work hours during the week.  29 U.S.C. § 213.  Thus the classification of an employee as "exempt" makes FLSA's requirements, privileges, and protections completely inapplicable to that employee.  In contrast, the occasional or sporadic "exclusion," contained in 29 U.S.C. § 207[19](p)(2), removes the "extra" hours worked by a nonexempt governmental employee from the total number of hours he worked during the week for the purpose of calculating overtime, thus reducing the employer's total overtime liability, but the employer still must pay the employee for the extra (occasional or sporadic) hours worked outside his regular job duties and overtime for any hours over forty that the employee works in his regular job.[20]  Unlike an exemption, the occasional or sporadic exclusion classifies the time worked by an employee, as opposed to classifying the employee's job.  Unlike an exemption (e.g., executive, administrative, professional), the occasional or sporadic exclusion does not deny the employee the privileges and

---

[19] Section 207 is entitled "Maximum hours."

[20] *See* 29 C.F.R. § 553.30(a) ("[W]here State or local government employees, solely at their option, work occasionally or sporadically on a part-time basis for the same public agency in a different capacity from their regular employment, the hours worked in the different jobs shall not be combined for the purpose of determining overtime liability under the Act.").

protections provided by the FLSA, and important public policy considerations involved in exemptions are not implicated by the occasional or sporadic exclusion. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2172 n.21 (2012)(the narrowly construed standard required for exemptions under *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)(exemptions to the FLSA must be "narrowly construed against the employers seeking to assert them and their application limited to those [cases] plainly and unmistakably within their terms and spirit.") does not apply to general definitions relevant throughout the FLSA).

HISD argues that the occasional or sporadic exclusion is more analogous to the Portal-to-Portal Act, enacted in response to broad judicial interpretations of the FLSA's undefined terms "work" and "workweek,"[21] which potentially threatened the creation of "wholly unexpected liabilities." The Portal-to-Portal Act exempted employers from FLSA liability for claims "based on activities which are preliminary to or postliminary to" the performance of principal activities that an employee is hired to

---

[21] *See* 29 U.S.C. § 251(a); *Tennessee Coal, Iron, & R. Co. v. Muscoda Local No 123*, 321 U.S. 590, 598 (1944)(broadly defining "work" as activity "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business"), *superseded on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84. (excluding from FLSA liability such activities as "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is asked to perform, and . . . activities which are preliminary to or postliminiary to said principal activity or activities."); *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014)(holding that employees' time waiting to undergo and undergoing security screenings before leaving warehouse each day was not compensable).

-40-

perform (§ 254(a)(2)[22]) and correlating sections 203(o)[23]
(compensability of time spent changing or washing clothes at the
beginning or end of each workday[24]) and 251-62.  In passing the

-----

[22] The Portal-to-Portal Act of 1947 limited the scope of
employers' liability in a number of ways. It excluded from
compensable time and FLSA liability such activities as "walking,
riding, or traveling to and from the actual performance of the
principal activity or activities which  such employee is asked to
perform, and . . . activities which are preliminary to or
postliminary to said principal activity or activities." 29 U.S.C.
§ 254(a).

[23] 29 U.S.C. § 203(o), enacted in 1949, is a subsection
of the FLSA's "Definitions" section that  defines "Hours Worked"
as follows:

> In determining for the purposes of sections
> 206 [establishing the minimum hourly wage]
> and 207 [maximum amount of hours an employee
> can work in a week] of this title the hours
> for which an employee is employed, there
> shall be excluded any time spent in changing
> clothes or washing at the beginning or end of
> each workday which was excluded from measured
> working time during the week involved by the
> express terms of or by custom or practice
> under a bona fide collective-bargaining
> agreement applicable to the particular
> employee.

In other words, the time spent changing clothes is to be excluded
from the measured working time (for purposes of § 207 requiring
employers to pay employees overtime compensation for hours worked
in excess of 40 hours per week) if it has been excluded by the
express terms of, or by custom or practice under, a bona fide
collective-bargaining agreement applicable to the employee.  The
FLSA, however, does not define "clothes" or "changing," and
circuit courts are split over the definitions.
    As will be discussed, HISD's arguments regarding the
appropriate standard of proof for exclusions, as opposed to
exemptions, are in accord with the holdings in *Salazar v.
Butterball, LLC*, 644 F.3d 1130 (10th Cir. 2011), *cert. denied*, 131
S. Ct. 73 (2010);  *Allen v. McWane, Inc.*, 593 F.3d 449 (5th Cir.
2010), *cert. denied*, 131 S. Ct. 73 (2010); *Anderson v. Cagle's,
Inc.*, 488 F.3d 945 (11th Cir. 2007), *cert. denied*, 553 U.S. 1093
(2008); and *Turner v. City of Phila.*, 262 F.3d 222 (3d Cir. 2001).

[24] *See Allen v. McWane, Inc.*, 593 F.3d 449, 453 n.2 (5th
Cir. 2010), *cert. denied*, 131 S. Ct. 73 (2010).

Portal-to-Portal Act, Congress was concerned that broad interpretations of the FLSA would "bring about financial ruin of many employers and seriously impair the capital resources of many others," resulting in "windfall payments" to employees and "serious and adverse effects upon the revenues of Federal, State, and Local governments."  29 U.S.C. § 251.

        According to HISD, the language of § 203(o) of the Portal-to-Portal Act and that in the occasional or sporadic exclusion of § 207(p)(2) are strikingly similar:  both permit certain finite hours to be removed from the employer's overtime calculations based on the manner of "work" performed, not on the classification of the employee's job, and nonexempt employees are still otherwise covered by the FLSA and entitled to earn overtime for all hours over forty worked in the scope of their regular employment.  Because Judge Miller relied on case law applying a narrow construction to exemptions under § 213 of the FLSA and thus incorrectly construed the occasional or sporadic exclusion, argues HISD, he imposed an erroneously high burden on HISD.  In *Christopher v. SmithKline*, 132 S. Ct. at 2170-74 & n.21, the Supreme Court held that the DOL's interpretation of an ambiguous regulation and the long standing practice of treating "outside salesmen" as exempt should not be given deference, and that once a court finds a provision is ambiguous, it must ask whether the interpretation is "plainly erroneous or inconsistent with the regulation" and whether the interpretation "reflect[s] the agency's fair and considered judgment on the matter." 132 S. Ct. at 2166.  Narrow construction of a provision against an employer

applies only to exemptions under the FLSA, not to broad statutory definitions, such as that of "sale". 132 S. Ct. at 2172 n.21.

In sum, HISD contends that the standard of narrow construction against the employer is inapplicable to the "occasional or sporadic" exclusion of § 207(p)(2) for five reasons: (1) the occasional or sporadic exclusion is not an exemption; (2) the public policy underlying that standard does not apply because the exclusion does not remove employees from the FLSA's protections; (3) the occasional or sporadic exclusion is analogous to the exclusions under the Portal-to-Portal Act and § 203(o), which are not narrowly construed; (4) the intent of Congress was to protect employers from unexpected and extreme liabilities and to prevent employees from receiving windfalls by excluding certain finite hours from overtime calculations warrants a lesser burden of proof for the occasional or sporadic exclusion; and (5) the Supreme Court has limited narrow construction to exemptions.

Plaintiff Blair's opposition to HISD's motion for reconsideration (#26 in H-13-2628) argues that HISD mislabels the occasional and sporadic exemption as an exclusion. Furthermore, regardless of whether the narrow construction standard applies, Blair insists that HISD has "failed to meets its burden to prove an affirmative defense beyond doubt," so Judge Miller properly denied its motion for summary judgment.

Blair asserts that the Portal-to-Portal Act and the occasional or sporadic exemption are clearly not analogous. The Portal-to-Portal Act removes hours from any payment, while the

occasional or sporadic exemption exempts hours from overtime calculations.   The exclusion in 29 U.S.C. § 203(o) of "any time spent changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee," was traditionally viewed as an affirmative defense, requiring the defendant to establish that hours do not fall within a normal workday, but recently cases have shifted to the plaintiff the burden to demonstrate whether a "custom or practice" exists.   *Allen v. McWane*, 593 F.3d at 458; *Anderson v. Cagle's Inc.*, 488 F.3d 945.   The occasional or sporadic exemption is statutorily identified as an exemption (29 C.F.R. § 553.30 under "Other Exemptions") and acts as an affirmative defense or matter in avoidance, imposing the burden of proof on HISD.   Blair claims that HISD fails to meet the burden of demonstrating that the ancillary duties were occasional, sporadic or substantially different and therefore Judge Miller properly denied the summary judgment motion.

Furthermore, argues Blair, unlike hours excluded under the Portal-to-Portal Act, the occasional or sporadic exemption requires payment by the employer to the employee for hours worked by the employee.   The only issue is whether the hours require overtime pay.   For the occasional or sporadic exemption (an affirmative defense)[25] to apply and take the hours out of overtime

---

[25]   Blair insists exclusions under the FSLA are not affirmative defenses.

-44-

in a given week, the defendant must demonstrate that it is a public agency, that the employee volunteered for the duties, that the duties are occasional or sporadic, and that the duties are substantially different from the employer's regular work.

In reply (#26 in H-13-2628), HISD contends that (1) Blair provides no arguments supporting his conclusion that § 207(p)(2) is an "exemption," not an exclusion analogous to the Portal-to-Portal Act, (2) that Blair fails to show that his ancillary work was performed in the same capacity as his regular work, and (3) that Blair does not establish that Judge Miller erred in determining that his ancillary duties were occasionally or sporadically performed.

HISD emphasizes the following facts are undisputed (#26 at p.2):

> HISD is a governmental entity that employed Blair; Blair was a non-exempt HISD employee; Blair voluntarily performed the ancillary duties; the dates and times Blair performed the ancillary duties; Blair's regular job duties (custodial and groundskeeping activities performed before and after athletic events including: cleaning athletic facilities and parking lots, and preparing fields and locker rooms for athletic events); Blair's ancillary job duties (non-custodial and non-groundskeeping activities performed during athletic events: taking tickets, operating a time clock, and guarding a door); Blair was properly paid $13.73 per hour when he performed regular job duties, and he was properly paid for all overtime that he worked relating to performing regular job duties; and Blair was paid $10.50 per hour whenever he performed ancillary job duties, and the hours he performed ancillary work were excluded from overtime wage calculations.

Since there are no disputed material facts, HISD asks Judge Miller to make conclusions of law regarding the application of section 207(p)(2).[26]   Urging that it has more than what Plaintiffs characterize as a "scrap of authority" and that the law addressing the exclusion versus exemption question supports HISD's contention that the occasional or sporadic exclusion is not an exemption and should not be narrowly construed, HISD cites *Allen v. McWane, Inc.*, 593 F.3d at 458 (explaining that the narrow construction against employers in an exemption analysis does not apply to exclusions under § 203(o)), as Fifth Circuit authority for the proposition that "the 'exemptions' the Supreme Court refers to as affirmative defenses to the FLSA all 'relate to the total exclusion of a particular worker or workers from certain FLSA protections,' not 'to the exclusion of only some *activities* from FLSA.'" *Id., quoting Adams v. United States*, 471 F.3d 1321, 1325-26 (Fed. Cir. 2006).  *See also Figas v. Horsehead Corp.*, Civ. a. No. 06-1344, 2008 WL 4170043, at *7, 9 (W.D. Pa. Sept. 3, 2008).[27]

---

[26] HISD points out that for purposes of the scope of its motion for summary judgment, the Court has not yet been asked to decide if HISD acted in good faith (relevant to Blair's claim for liquidated damages) or if it willfully violated the FLSA (relevant to Blair's claim that he is entitled to recover three years of damages).

[27] In *Figas*, in rejecting the plaintiffs' attempt to view § 203(o) as an exemption requiring narrow construction against employers, the district court opined, "An *exemption* which denies FLSA protection altogether to a category of employees differs meaningfully from an *exclusion* which merely operates to define the terms and scope of the statutory protection provided to those who do enjoy such protection." 2008 WL 4170043 at *7 (emphasis in original).  The court summarized, *Id.* at *9,

> Not only do the exemptions contained in § 213
> (which deny FLSA protection to certain

-46-

Relying on *Allen v. McWane*, 593 F.3d at 458, as its persuasive authority, HISD urges that § 207(p)(2) is an exclusion because, like §203(o), it allows the exclusion of certain activities from overtime payments rather than removing workers from the coverage under the FLSA.   Therefore the Court should conclude that Judge Miller applied the wrong burden in his analysis of the occasional or sporadic exclusion.

HISD points out the similarities of language (underlined portions below) in § 203(o) and § 207(p)(2) to support its analogy argument.   Section 203(o) states,

> In determining <u>for the purposes of section [ . . . ] 207</u> of this title the <u>hours for which an employee is employed</u>, there <u>shall be excluded</u> any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

---

categories of employees) operate differently than § 203(o)(which *potentially* decreases the amount of *time* for which a concededly covered employee is entitled to payment), but the purpose that they serve differs from that served by § 203(o) as well.   Section 213 exempts specific categories of employees from specific FLSA substantive provisions in order to limit the reach of those provisions even where no collective-bargaining agreement exists. 29 U.S.C. § 213.   29 U.S.C. § 213. Section 203(o), on the other hand, evinces a legislative determination that, under certain circumstances, deference to the terms of a bona fide collective-bargaining agreement may be more in keeping with the FLSA's spirit of protecting the interests of covered workers than would be strict, unqualified adherence to a loose-fitting, imprecise statutory mandate.

Section 207(p)(2) reads,

> If an employee of a public agency which is a
> State, political subdivision of a State, or
> an interstate governmental agency undertakes,
> on an occasional or sporadic basis . . .
> employment . . . in a different capacity from
> any capacity in which the employee is
> regularly employed, the hours such employee
> was employed in performing the different
> employment shall be excluded by the public
> agency in the calculation of the hours for
> which the employee is entitled to overtime
> compensation under this section.

HISD further observes that the Portal-to-Portal Act directly references § 207, in which the occasional or sporadic exclusion is found, and relates to calculating hours worked to determine if particular hours should be paid at an overtime rate. Moreover, neither provision refers to § 213 or exemptions.

Nor, argues HISD, has the DOL interpreted § 207(p)(2) in any way that would help this Court decide if the subsection is an exclusion or an exemption, so there is no deference issue here. 29 C.F.R. § 533.30 merely addresses how to identify when work is occasional or sporadic and when it is different from regular work.

Although Blair attempts to convince Judge Miller to limit his examination on the exemption versus exclusion question to titles in the regulations (i.e., that § 207(p)(2) is under a section titled "other exemptions"), HISD contends that the plain language of the FLSA undermines Blair's argument. Congress intentionally chose not to include § 207(p)(2) in its "Exemptions" section, § 213. Nor is the occasional or sporadic exclusion identified as an exemption in the United States Code. Nor does it serve the same function as an exemption. A comparison of the

language §§ 203(o) and 207(p)(2) to that of § 213 reveals that § 207(p)(2) was not intended to be an exemption: while § 213 states that the FLSA's requirements "shall not apply with respect to" various types of specifically named types of exempt *employees*, §§ 203(o) and 207(p)(2) exclude certain *hours of work* from counting toward overtime calculations for non-exempt employees.

HISD further urges that the DOL "misguidedly employs 'exemption' and 'exclusion' throughout its interpretations." #26 at p. 7. While the occasional or sporadic exclusion is found under the section titled "other exemptions," the DOL states "hours worked are to be *excluded* from overtime calculations under § 207(p)(2). 29 C.F.R. § 553.30(b)(1). The DOL also put 29 C.F.R. § 553.31 within the "other exemptions" sections, although §553.31 relates to 29 U.S.C. § 207(p)(3), which the DOL characterizes as an exception rather than as an exemption. DOL Wage and Hour Op. Letter, FLSA2008-2, 2008 DOLWH Lexis 7 (Mar. 17, 2008)("Because section 7(p)(3) is a exception to the overtime, but not minimum wage, provision of the FLSA, it does not exempt an employer from its requirement to pay minimum wagers . . . under the [FLSA}."). The DOL also linked the label of "exemptions" to 29 C.F.R. § 785.9, as it applies to § 703(o). The DOL also refers to § 703(o) as an "exclusion." These inconsistencies show that the DOL has not made an interpretation, no less one deserving deference, that §207(p)(2) is an exemption.

Regardless of what it is termed, it is well established that the plaintiff bears the burden of proving that he was not properly paid for the work he performed. *Harvill v. Westward*

*Communications, LLC*, 433 F.3d 428, 441 (5th Cir. 2005).[28] Therefore Judge Miller erred in narrowly construing § 207(p)(2) against HISD and placing the burden of proof on it.   HISD maintains it is entitled to summary judgment because Blair failed to satisfy his burden to prove that HISD did not comply with § 207(p)(2).   *Allen v. McWane, Inc.*, 593 F.3d at 459 (holding that § 203(o) is not an affirmative defense); *Hopkins v. Tex. Mast Climbers, LLC*, No. Civ. A. H-04-1884, 2004 WL 3435033, at *7 (S.D. Tex. Dec. 14, 2005)(the fluctuating workweek method of calculation what overtime is owed to an employee under 29 C.F.R. § 778.114 is neither a defense nor an exemption to the FLSA, and the employee bears the burden of proving compliance with the fluctuation workweek method), *citing Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).

---

[28]  In *Harvill, id.*, the Fifth Circuit quotes from *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), *superseded by statute as stated in IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), in finding that where an employee sues for unpaid overtime compensation  "where the employer's records are inaccurate or inadequate . . . an employee meets his burden of proof"

> if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate.

Blair's contention that his ancillary duties and his regular job duties were not substantially different is based on his simplistic, illogical argument that because the job duty classification numbers are in close sequence, the duties are similar. The regulation indicates that for job duties to be in a "different capacity" they "must not fall within the same general occupational category." 29 C.F.R. §553.30(c)(1). As an example of jobs falling in the same general occupational category, and thus worked in the same capacity, the regulation cites an employee whose primary job is playground maintenance and whose auxiliary job is cleaning a recreation area. *Id.* at (c)(3). These duties are within the same job family, "Building and Grounds Cleaning and Maintenance," in the O*NET Classifications. See #26 in H-13-2628, Ex. 1. The regulation's example of jobs falling in different occupational categories is an employee working primarily as a bookkeeper and performing auxiliary work as a referee at basketball games. 29 C.F.R. § 553.30(c)(4). These duties are in different job families of the O*NET, i.e., "Office and Administrative Support" for bookkeepers and "Arts, Design, Entertainment, Sports, and Media" for referees. #26 in H-13-2628, Ex. 2. Blair ignores these job families and the distinctive job duties identified in each category.

HISD further insists that the Court correctly evaluated the entirety of Blair's ancillary work in correctly determining that it was performed occasionally or sporadically. Judge Miller noted multiple and separate lengthy gaps in his ancillary work that were not just for summer break.

Accordingly HISD asks Judge Miller to grant its motion for reconsideration, withdraw his issued memorandum and order, and grant HISD's motion for summary judgment.

**Judge Gilmore's Order in Franklin v. HISD, H-13-3207**[29]

The facts in *Franklin* are similar to those in here in *Ford*. HISD hired Cynthia Franklin in August 1985 as an equipment manager for its Athletic Department at the Butler Sports Complex, containing various arenas for football, basketball, track and field, volleyball, baseball, and tournaments. Her regular work tasks, performed Monday through Friday from 7:00 a.m. to 3:00 p.m., were comprised of picking up equipment from the Delmar Sports Complex, notifying coaches of newly ordered equipment and delivering it to them, issuing paperwork for the equipment, retrieving and delivering sports equipment from and to other HISD stadium complexes and school campuses, separating and cataloging sports equipment, cleaning and folding uniforms, cleaning the dressing rooms and gym area after games, emptying trash, and picking up litter.

Occasionally Franklin performed extra work, mainly in the evenings and on weekends and outside of her usual 7:00 to 3:00 regular work schedule, for HISD athletic events, which involved taking tickets at the gate, guarding doors, keeping score and time at the various events, working the concession stand, and making copies of game video footage. Her pay for the extra work was at a different hourly rate than her pay for her regular job. She

---

[29] Submitted as Exhibit 1 to #28 in the instant case, H-13-2598.

claims that she performed the extra work frequently and regularly throughout various sports seasons in essentially every month of the year because HISD operated its sports complex continually. One time, from October 29, 2010 through September 8, 2012, she asserts that she worked a total of 409.95 hours in 100 days.  HISD argued that her ancillary work was infrequent and irregular,

Franklin filed suit against HISD on October 31, 2013 to recover overtime wages for her extra work exceeding forty hours per week.  HISD moved for summary judgment on the grounds that her ancillary work falls within the "occasional or sporadic" exclusion to overtime pay wage protection under the FLSA.  The parties agreed that HISD is a public agency and that Franklin's ancillary work was voluntary and part-time.  The only issues where whether her work was occasional and sporadic and whether her auxiliary work was performed in a different capacity from her regular work.

Judge Gilmore, like Judge Miller, observed that there is no clear standard for analyzing whether ancillary part-time employment is occasional or sporadic.  Nevertheless she found that Franklin's employment record, which showed that her extra work occurred at least two days a week for at least eight hours a week in every month from October 2010 to September 2012, except for Thanksgiving and winter holidays, and in every month of the year except November and December of 2011 through 2012, and that the majority of the ancillary work was on a weekly basis rather than on an irregular or infrequent basis, undermined HISD's claim that the ancillary work was irregular and infrequent.  Therefore Judge Gilmore concluded as a matter of law that Franklin's ancillary

work was not exempt from the FLSA because it was not occasional or sporadic.

"[I]n an abundance of caution and due to the dearth of existing jurisprudence on the issue," Judge Gilmore also addressed whether Franklin's auxiliary work was performed in a different capacity from her regular work duties, i.e., whether it fell "outside the same general occupational category" (§ 553.30(c)(3)). Like Judge Miller, Judge Gilmore found that the examples provided by the regulation gave little guidance. Furthermore, Franklin, herself, argued that her part-time employment was not in a different capacity because her duties in her ancillary work overlapped with the same cleaning duties that she performed during her primary job. Applying the established rule that FLSA coverage must be narrowly construed against the employer and viewing the evidence in a light most favorable to Franklin, Judge Gilmore stated that she could not find as a matter of law that Franklin's ancillary work (facilitating live sporting events) was sufficiently similar to her regular work (handling and distributing sports equipment) to constitute work within the same occupational capacity. Nevertheless Judge Gilmore further observed the "troubling" overlap of Franklin's janitorial and cleaning duties in her primary and ancillary work for HISD. Judge Gilmore concluded that HISD failed to meet its burden of showing that Franklin's ancillary work was exempt from the FLSA under 29 U.S.C. § 207(p)(2) and denied HISD's motion for summary judgment.

### Court's Decision

This Court addresses as the threshold question here whether the "occasional or sporadic" provision, 29 U.S.C. § 207(p)(2), is an "exemption" to be narrowly construed against the defendant employer, HISD, who would bear the burden of affirmatively showing that its employees Ford and Reid are "plainly and unmistakably"[30] exempt from the FLSA's overtime provisions, or is it an "exclusion," analogous to § 203(o), and therefore not narrowly construed against HISD and on which Ford and Reid bear the burden of proof that they performed work for which they were not properly compensated in overtime pay.

The United States Supreme Court and all but one[31] of the appellate courts that have addressed § 203(o) have concluded that it is not an "exemption" to be narrowly construed against employers.  After careful review of the law regarding it and the reasoning of these courts, the Court examines whether § 207(p)(2) should also be treated as an exclusion, and not as an exemption, for the same reasons as § 203(o), resulting in the statute's not being construed narrowly against HISD nor HISD's being required to show that Ford and Reid plainly and unmistakably fit within an

---

[30] *Meza v. Intelligent Mexican Marketing, Inc.*, 720 F.3d 577, 581 (5th Cir. 2013)("The employer must prove facts by a preponderance of the evidence that show the exemption is 'plainly and unmistakably applicable.'"), *citing Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

[31] *Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003)("FLSA exemptions [like § 203(o_] . . . are to be narrowly construed against the employer seeking to assert them."), *aff'd*, 546 U.S. 21 (2005).  No other appellate courts have followed the Ninth Circuit.

exemption from the overtime provisions, but instead with the burden of proof being placed on Plaintiffs to prove that they were not properly compensated with overtime pay for their auxiliary work.

The United States Supreme Court in *Sandifer*, 134 S. Ct. at 879 n.7, opined,

> The exemptions from the Act generally reside in § 213, which is entitled 'Exemptions' and classifies certain kinds of workers as uncovered by various provisions. Thus in *Christopher v. SmithKline Beecham Corp.*, . . . 132 S. Ct. 2156, 2171-72 n.21 . . . (2012), we declared the narrow-construction principle inapplicable to a provision appearing in § 203, entitled 'Definitions.'").

In *Christopher, id.*, the Supreme Court stated that the narrow construction standard for exemptions established in *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. at 392, "is inapposite where, as here, we are interpreting a general definition that applies throughout the FLSA."

The Fifth Circuit has also rejected the argument that § 203(o) is an "exemption" under the FLSA because it was not included under § 213, expressly labeled "Exemptions"; instead § 203 states it "is a list of definitions." *Allen v. McWane, Inc.*,593 F.3d at 458. The Fifth Circuit concluded that "subsection (o) is not an affirmative defense" with the burden of poof on the defendant; instead plaintiffs bear the burden of persuasion whether or not a custom or practice exists of including or excluding the time changing or washing clothes from measured working time under a bona fide collective-bargaining agreement. *Id., citing* the Third Circuit's opinion in *Turner*, 262 F.3d at

-56-

225-25.  The Fifth Circuit further noted that "the 'exemptions' the Supreme Court refers to as affirmative defenses to the FLSA all 'relate[] to the total exclusion of a particular worker or workers from certain FLSA protections[,]' not 'to the exclusion of only some *activities* from FLSA.'"  *Id., citing Adams v. United States*, 471 F.3d 1321, 1325-26 (Fed. Cir. 2006).

        This Court also examined the reasoning of the other appellate courts in concluding why § 203(o) is not an affirmative defense and an "exemption," but instead an "exclusion," to determine whether these reasons would also apply to § 207(p)(2).  The following decisions concluded that § 203(o) is not an exemption as originally defined under the FLSA: *Turner v. City of Phila.*, 262 F.3d 222, 224 (3d Cir. 2001)("Section 203(o) . . . provides a specific exclusion from the calculation of hours worked for clothes and uniform change time"); *Adams v. United States*, 471 F.3d 1321, 1325-26 (Fed. Cir. 2006)("[T]he Portal-to-Portal Act does not create an "exemption" in the same sense as the Supreme Court used in [*Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)('the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the government has the burden of proof')], which "all related to 'the total exclusion of a particular worker or workers from certain FLSA protections" but not to "the exclusion of only some activities from FLSA."); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 957-58 (11th Cir.)("Had Congress sought to bestow upon § 203(o) the same status as the exemptions set forth in § 213, it could have easily amended § 213"; the legislative history of the Portal-to-

Portal Act and the addition of what would become § 203(o),
"curtailing employee-protective interpretations of the FLSA,"
demonstrates that "construing § 203(o) narrowly against employers
as an FLSA 'exemption' contravenes not only basic tenets of
statutory construction but also the readily apparent intent of the
legislators who approved the amendments's language;""§ 203(o) is
not an exemption under the FLSA but is instead a definition that
limits the scope of the FLSA's key minimum wage and maximum hour
provisions."),[32] *cert. denied*, 553 U.S. 1093 (2007); *Franklin v.
Kellogg Company*, 619 F.3d 604, 611-12 (6th Cir. 2010)(agreeing for
the reasons cited by the Fifth, Eleventh, Third and Federal
Circuits that "§ 203 is not an exemption and therefore not an
affirmative defense"); *Salazar v. Butterball, LLC*, 644 F.3d 1130,
1130, 1138-39 (10th Cir. 2011)("§ 203(o) differs from the
exemptions in 29 U.S.C. § 213 in three important respects. First,
it is part of the definition of hours worked and is not
specifically designated as an exemption. Second, § 203(o) removes
only particular discrete activities from the definition of hours
worked, whereas the § 213 exemptions remove entire classes of

---

[32] The Eleventh Circuit noted that the Ninth Circuit in
*Alvarez* had cited the Fifth Circuit's opinion in *Mitchell v. Se
Carbon Paper Co.*, 228 F.2d 934, 937 (1955), which in *dicta*
referred to § 203(o) as an exemption. (Decisions of the Fifth
Circuit issued before Oct.1, 1981, were precedential for the
Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209
(11th Cir. 1981(*en banc*).) The Eleventh Circuit explains that it
was addressing the issue of whether § 201(o) constituted an
exemption for the first time in *Anderson*, "we conclude that §
203(o) is not an exemption under the FLSA, but is instead a
definition that limits the scope of the FLSA's key minimum wage
and maximum hour provisions." 488 F.3d at 957.

employees from FLSA cover coverage.  Employees who are potentially affected by §203(o) are still entitled to the bulk of the FLSA's protections, whereas employees affected by an FLSA exemption are entitled to no FLSA protections at all.  Third, § 203(o) does not exactly remove discrete activities from FLSA coverage; it gives employers and employees the *option* of removing those activities from FLSA coverage through collective bargaining.").

Obviously, § 207(p)(2) is not included under the designated "Exemptions" in § 213, and Congress, if it chose, could have amended § 213 to include it, but did not.  More persuasive is the fact that it does not totally exclude all workers who perform auxiliary work from all the protections of the FLSA, but instead restricts pay for the hours in that auxiliary work only from receipt of overtime compensation.  Moreover, the Court observes that construing it as an exclusion rather than an exemption is more in line with the trend under the Portal-to-Portal Act toward protecting employers from excessive liability: as one scholar wrote about ¶203(o) that is true also of § 207(p)(2), the "motivating force" behind it is "employer friendly."  Victor M. Velarde, *On the Construction of Section 203(o) of the FLSA: Exclusion Without Exemption*, 21 U. Miami Bus. L. Rev. 253. 273 (Summer 213).  Thus the Court finds very persuasive HISD's argument that § 207(p)(2) should not be construed as an exemption and an affirmative defense narrowly construed against HISD, which therefore should also not bear the burden of proving that Ford and Reid  plainly and unmistakably fit within an exemption from the overtime provisions.

Nevertheless, because no court, no less higher court, has yet addressed the issue and come to this conclusion, the Court alternatively examines whether HISD has met its burden under the FLSA exemption standard.

Noting that Plaintiffs have not challenged the accuracy of HISD payment records, the Court finds that HISD has clearly shown through Ford's and Reid's payment records that each man in his work as a stadium attendant performed work that was both occasional and sporadic.   It is undisputed that as public employees of HISD, they each performed their extra work voluntarily, part-time, at hours that were not covered by their regular work, and for different rates than their regular work. Plaintiffs' attempt to blur the facts by arguing that the focus should be on the job, which was available year round, rather than what the records show was each individual Plaintiff's (and other employees') irregular, scattered performances of such a job, is, as HISD argues, unpersuasive, illogical, and contrary to the definitions in the FLSA.   Moreover, Plaintiffs' auxiliary work clearly falls within 29 C.F.R. §§ 553.30(b)(3), which expressly states that such work at sports events in public stadiums by regular employees of local governmental agencies taking ti ckets and providing security "may be considered occasional or sporadic . . . even where the need can be anticipated because it recurs seasonally."

The remaining question is whether Ford and Reid performed their regular jobs in a "different capacity" than their auxiliary jobs, i.e., whether it fell within the same or different

occupational categories, regarding which Judges Miller and Gilmore denied summary judgment to HISD in their cases.  Unlike Franklin in Judge Gilmore's case, Ford and Reid have alleged completely different types of tasks for their regular, outdoor grounds-keeping work and their auxiliary, indoor, sports games-related activities, performed at distinctly different times.  Here, unlike in the cases before Judge Miller and Judge Gilmore, HISD has not simply relied on factual allegations summarized above distinguishing their regular work from their auxiliary work, nor on the examples provided in the regulation, which do not fit here sufficiently to rule on the issue as a matter of law.  But HISD has applied the occupational categories defined in the Dictionary of Occupational Titles and in its replacement, the newer, updated O*NET, to demonstrate in detail that the two types of work of each Plaintiff were performed in performed different capacities.  See pp. 25-27 (and the referenced authority and evidence submitted) of this Opinion and Order.  The Court agrees with HISD, and an examination of these two sources clearly demonstrates, that Plaintiffs' argument that because the classification numbers are near each other the job families are related or that the larger the separation between the classification numbers in the Dictionary of Occupational Titles, the greater the disparity in jobs, while the closer the numbers, the more similar the job duties, are frivolous and without foundation.  See pages 32-33 of this Opinion and Order.  Significantly Plaintiffs have not controverted this evidence.  Nor have they presented any evidence to rebut HISD's O*NET evidence of different capacities.

Accordingly, the Court finds that Plaintiffs have failed to satisfy their burden to present any evidence to raise a genuine issue of material fact regarding Ford's and Reid's occasional and sporadic performances of their auxiliary work or regarding their performance of their regular job and their auxiliary work in different capacities, such that any reasonable jury could return a verdict for them. *Anderson*, 477 U.S. at 248. HISD has presented evidence uncontroverted by any significant probative evidence from Ford and Reid that Plaintiffs plainly and unmistakably fit within 29 U.S.C. § 207(p)(2) and are not entitled to overtime pay for their auxiliary work. Therefore the Court

ORDERS that HISD's motion for summary judgment is GRANTED. Final judgment will issue by separate order.

**SIGNED** at Houston, Texas, this __18th__ day of __March__, 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-62-